UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARK BENNER,

    Petitioner,

v.       CAUSE NO. 3:20-CV-731-DRL-MGG

CHIEF PROBATION OFFICER,

    Respondent.

## OPINION AND ORDER

Mark Benner, by counsel, filed a habeas corpus petition to challenge his convictions for child seduction under Case No. 71D03-1511-FC-9. Following a jury trial, on October 5, 2018, the St. Joseph Superior Court sentenced Mr. Benner to five and half years of incarceration suspended to probation.

## BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence from the trial:

> P.A. was born in January 1996. She knew Benner and his family through her sports activities—Benner's wife was her volleyball coach in middle school, Benner's daughter was a basketball teammate and friend, and Benner coached P.A.'s summer league basketball team the summer after her eighth grade year. During the relevant time period, Benner had been coaching for more than two decades.
>
> From a very young age, P.A. was interested in playing basketball and was identified in the community as a very good basketball player. Even before she was old enough to be on the school team, she attempted to join their practices, and, as soon as she was old enough, she joined the fourth grade

team at her school. She was often described as being "very determined," "very dedicated," "very talented," a hard worker, focused, and a "really good basketball player" with a heightened ambition and drive greater than most of her peers. P.A. looked up to her coaches and explicitly followed their guidance and instructions and was highly impressed with Benner's coaching ability.

Beginning with the 2009-2010 school year, Benner served as an assistant varsity coach for the girls basketball team at Mishawaka High School. In 2010-2011, when P.A. was a freshman, she played for both the junior varsity and the varsity basketball teams and was considered an important player at the varsity level. By that time, it was common knowledge that P.A. was a very passionate and dedicated basketball player who was always seeking to improve her skills and excel in her sport. All of her coaches viewed her as an integral component of the Mishawaka High School girls basketball program, and Benner knew that her ultimate goal was to obtain a scholarship to play college basketball.

With the aim of obtaining a college basketball scholarship, P.A. did extra one-on-one workouts with Benner several times a week during the summer of 2011 to improve her basketball skills. Commencing her sophomore year, P.A. made the varsity team and remained at that level throughout her high school career. Benner served as the assistant varsity basketball coach until he submitted his resignation in 2013 at the end of P.A.'s junior year. Knowing P.A.'s intense motivation to excel, Benner worked more with her and provided her with more individual attention than he did with any other player. Because of this concentrated one-on-one time together, Benner developed a closer relationship with P.A. than with other players on the team.

In January 2013, concern arose at the school regarding some text messages that had been exchanged between Benner and P.A. It was later determined that the texts were basketball related, and no action was taken by the school against Benner. However, in March of 2013, at the end of the 2012-2013 basketball season, Benner resigned as assistant varsity coach. After submitting his letter of resignation, Benner drove to P.A.'s home, picked her up, and showed her his resignation letter. After P.A. read the letter, she became saddened and cried, and it was at that point that Benner kissed her. At that time, P.A. was seventeen and a junior in high school, and Benner was forty-three. Benner told P.A. that his resignation would not affect them working together to get her into college and that he would continue working with her on an individual basis.

> In August 2013, before P.A.'s senior year of high school, a sexual relationship began between Benner and P.A. Their sexual activities included fondling, oral sex, and sexual intercourse and continued through P.A.'s senior year. P.A. graduated from Mishawaka High School in 2014. She then attended Indiana University South Bend on a basketball scholarship. Benner's sexual relationship with P.A. continued until the spring of her freshman year of college. Their relationship ended when, in March 2015, Benner accidentally sent to his daughter a text message intended for P.A. It was only then that Benner's wife and P.A.'s parents learned of their intimate relationship.
>
> Once the relationship became known, an investigation was conducted, and, on November 20, 2015, the State charged Benner with two counts of child seduction, one as a Class D felony and one as a Class C felony.
>
> * * *
>
> A jury trial on the charges was held August 20-21, 2018, at the conclusion of which Benner was found guilty as charged. On October 5, the court sentenced Benner to consecutive terms of eighteen months and four years, all suspended to probation. Benner now appeals his convictions.

ECF 7-12 at 2-5; *Benner v. State*, 131 N.E.3d 634, 635-37 (Ind. Ct. App. 2019).

In the habeas petition, he argues that he is entitled to relief because the child seduction statute under which he was convicted, Ind. Code § 35-42-4-7, is unconstitutionally vague.

## STANDARD

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## DISCUSSION

In his sole claim, Mr. Benner argues that he is entitled to habeas relief because the child seduction statute under which he was convicted is unconstitutionally vague. "The Fifth Amendment provides that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

"[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process." *Id.*

"Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). That said, the Constitution does not demand perfection from legislatures drafting criminal codes given that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." *United States v. Powell*, 423 U.S. 87, 93 (1975). "The fact that [the legislature] might, without difficulty, have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *Id.* at 94.

The relevant provisions of the child seduction statute, as amended on July 1, 2013, follow:

> (i) For purposes of this section, a person has a "professional relationship" with a child if:
>
> > (1) the person:
>
> > \* \* \*
>
> > > (B) is employed in a position in which counseling, supervising, instructing, or recruiting children forms a significant part of the

5

employment; and

(2) the person has a relationship with a child that is based on the person's employment or licensed status as described in subdivision (1).

* * *

(n) A person who:

(1) has or had a professional relationship with a child less than eighteen (18) years of age whom the person knows to be less than eighteen (18) years of age;

(2) may exert undue influence on the child because of the person's current or previous professional relationship with the child; and

(3) uses or exerts the person's professional relationship to engage in sexual intercourse, other sexual conduct (as defined in IC 35-31.5-2-221.5), or any fondling or touching with the child with the intent to arouse or satisfy the sexual desires of the child or the person;

commits child seduction.

* * *

(p) In determining whether a person used or exerted the person's professional relationship with the child to engage in sexual intercourse, other sexual conduct (as defined in IC 35-31.5-2-221.5), or any fondling or touching with the intent to arouse or satisfy the sexual desires of the child or the person under this section, the trier of fact may consider one (1) or more of the following:

(1) The age difference between the person and the child.

(2) Whether the person was in a position of trust with respect to the child.

(3) Whether the person's conduct with the child violated any ethical obligations of the person's profession or occupation.

(4) The authority that the person had over the child.

(5) Whether the person exploited any particular vulnerability of the child.

> (6) Any other evidence relevant to the person's ability to exert undue influence over the child.

Ind. Code § 35-42-4-7 (eff. July 1, 2013).

In the habeas petition, Mr. Benner frames his primary vagueness argument as follows:

> [T]he child seduction statute is unconstitutionally vague because under a reasonable interpretation of the amendment he had *never* had a "professional relationship" with [the victim] at the time he engaged in sexual activity with her, since at the time he had been employed as her basketball coach the statutory definition of "professional relationship" had not yet come into being, and did not come into being until after he had already ended that employment, and since when the statutory definition of "professional relationship" *did* come into being on July 1, 2013 it only applied by its express terms [when] the person "is employed"—*not* was employed. Any fondling or touching between Benner and [the victim] after his employment as her coach had ended but before the amended statute become effective on July 1, 2013 would clearly have been legal under the law in effect prior to that date. Therefore, it would have been reasonable for Benner to conclude, if he was aware of the statutory amendment after July 1, 2013, that he did not have a "professional relationship" with [the victim] when he was her basketball coach, and that he could not have "used or exerted" such a "professional relationship" to engage with a sexual relationship with her on or after July 1, 2013.

ECF 1 at 5-6.

On interlocutory appeal, the Indiana Court of Appeals rejected this argument, reasoning that Mr. Benner could have discerned from the July 2013 version of the statute that he had had a professional relationship with the victim as her basketball coach and that he could not use that relationship to pursue a sexual relationship with her. ECF 7-6 at 10-11. Judge Paul D. Mathias dissented, finding ambiguity in the statute due to the inconsistent use of past and present tenses and the practical impossibility of using a

7

relationship that no longer exists in any manner. *Id.* at 12-18.

After reviewing the record, the court cannot find that the state court reached an unreasonable decision. To start, Mr. Benner's argument boils down to the ordinary person's ability to conjugate verbs. He notes that, in subsection 7(i), the statute defines a person who has a professional relationship with a child as a person who is employed in a position where instructing children is a significant part of the job duties and has a relationship with the child based on that employment. He also notes that, in subsection 7(n), the statute proscribes certain behaviors of individuals who have previously had a professional relationship with a child. He then asserts that a person of ordinary intelligence would be unable to reconcile the use of present tense in subsection 7(i) with the use of past tense of the subsection 7(n).

It was not unreasonable for the state court to find that a person of ordinary intelligence would have little difficulty in understanding these provisions. For example, a "supervisor" could be reasonably defined in the present tense as "an individual who oversees or monitors other individuals." From that definition, an ordinary person would understand the use of the term "former supervisor" (or "an individual who was a supervisor") as referring to "an individual who oversaw or monitored other individuals but no longer does." The same reasoning applies to the references in the child seduction statute to individuals who "had a professional relationship with the child" and to "previous professional relationships." Definitional sections of statutes are frequently stated in the present tense, but that doesn't preclude their application in the past tense when the statute plainly turns to call for that.

8

And this statute plainly does. Subsection 7(n)(1) speaks in terms of a person who "has *or had* a professional relationship," and subsection 7(n)(2) speaks of the risk of undue influence from the person's "current *or previous* professional relationship." The statute thus straightforwardly criminalizes conduct that builds on a current or past professional relationship. The concern that the last subsection, subsection 7(n)(3), is unconstitutionally vague because an ordinary person would not understand how he might "exert" a professional relationship for inappropriate sexual conduct when it no longer exists seems answered squarely by subsection 7(p). That subsection provides a variety of factors for the jury to decide whether this has been done—the age difference between the person and child, whether the person held a position of trust or authority over the child, whether the person violated ethical obligations in his profession, whether the person exploited a particular vulnerability in the child, and other factors. Rather than offering vague proscription, the statute articulates clear guideposts for that finding.

Mr. Benner argues that "a person could not possibly use or exert a professional relationship that no longer existed." This argument overlooks the practical reality that a child's subjective perception of a teacher, coach, or any other similarly influential authority figure, does not inevitably vanish at the moment the final buzzer sounds in a season-ending match or on the last day of classes before summer vacation. Even setting aside these subjective perceptions, a teacher can use his relationship with a minor student to affect that student's life meaningfully and tangibly in numerous ways after the end of the formal relationship. For example, a teacher could offer or decline to provide a favorable recommendation that would facilitate their former student's access to

9

prestigious employment or educational opportunities. Similarly, a teacher could have a former student who struggled in a particular school subject but who also possessed an intense desire to attend college on an academic scholarship and then decide to offer the student private tutoring sessions in an effort to engage in sexual conduct with that student by *quid pro quo* or merely by increasing the amount of time spent with that student in an isolated environment. Or a coach could amorously promise to continue to coach and work with the minor notwithstanding his resignation that day.

Based on the facts set forth by the Indiana Court of Appeals on direct appeal (ECF 7-12 at 2-5), Mr. Benner used his status as the victim's former coach in that very manner. The victim was a dedicated and passionate basketball player from an early age, and her ultimate goal was to obtain a college basketball scholarship. She was particularly impressed with Mr. Benner's coaching ability and worked with him individually several times a week to improve her basketball skills. Immediately after Mr. Benner resigned, he drove to her house and informed her, which caused her to cry. Mr. Benner responded by kissing her and assuring her that they would continue working together toward improving her basketball skills and obtaining a scholarship. In other words, he immediately conveyed his attraction to her and told her that he would continue the coaching relationship despite the termination of his employment. He built on the professional relationship—or exerted or used that professional relationship—and so an ordinary person reading this statute could understand. Her parents allowed him to spend time alone with her due to this coaching relationship. Five months later, that coaching relationship evolved into a sexual relationship. These facts adequately support the jury's

finding that Mr. Benner used or exerted his status as the victim's former varsity coach, or, in other words, his former professional relationship, to engage in sexual activity with the victim. More significantly, the statute, as amended in July 2013, fairly apprised Mr. Benner that engaging in sexual conduct with the victim in August 2013 during the course of this continued coaching relationship placed him at risk of criminal prosecution. *See Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.").

Mr. Benner argues that the statute is vague because "a person might have a sexual relationship with a seventeen-year-old while also at the same time having a professional relationship and yet sincerely and reasonably believe that he or she is not somehow using or exerting the professional relationship to engage in the sexual conduct and therefore violating the child seduction statute." He also argues that the statute allows the jury to decide arbitrarily that "a one year difference is okay, but a ten year difference is not" rather than drawing a specific line as Indiana does with respect to the age of consent. The crux of these arguments is that the statute does not provide sufficient information to allow individuals to discern, with exacting precision, whether a prospective jury would find them guilty of the crime when such individuals are considering whether to engage in activity that constitutes or resembles a crime. The Constitution does not demand this level of precision even from the drafters of criminal statutes, and a person engaging in conduct that resembles a crime bears the consequences of subjecting themselves to such a risk. *See Nash v. United States*, 229 U.S. 373, 377 (1913) ("The very meaning of the fiction

11

of implied malice in such cases at common law was, that a man might have to answer with his life for consequences which he neither intended nor foresaw."); *United States v. Cook*, 970 F.3d 866, 875 (7th Cir. 2020) ("[S]imply because a criminal statute uses qualitative language to articulate a liability standard does not mean that the statute is impermissibly vague, especially when the statute under scrutiny calls upon the court to apply that standard to a concrete set of facts.").

The United States Supreme Court has upheld similarly imprecise statutes against as-applied challenges for vagueness. For instance, in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), a storeowner argued that an ordinance prohibiting individuals from selling "any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs, as defined by Illinois Revised Statutes, without obtaining a license therefor" was unconstitutionally vague, focusing on the "designed or marketed for use" language. *Id.* at 492. The Supreme Court rejected the challenge, reasoning that, while the ordinance allowed for some ambiguity, it indisputably covered some of the storeowner's merchandise, including "roach clips" and certain models of pipes. *Id.* at 502. The Supreme Court also found that the ordinance indisputably covered the placement of publications related to controlled substance use in close proximity to pipes and rolling papers. *Id.* at 502-03.

Likewise, in *United States v. Powell*, 423 U.S. 87 (1975), a criminal defendant argued that a statute prohibiting the mailing of firearms "capable of being concealed on the person" was unconstitutionally vague. *Id.* at 318. The Supreme Court noted some ambiguity due to the variation in the physical characteristics of individuals and in

12

different types of clothing but found it appropriate to infer "the commonsense meaning that such a person would be an average person garbed in a manner to aid, rather than hinder, concealment of the weapons." *Id.* at 320. As a result, the Supreme Court rejected the challenge because the sawn-off shotgun at issue fell well within those parameters. *Id.*

As applied here, a person of ordinary intelligence would understand that the child seduction statute prohibited Mr. Benner from using his former status as the victim's coach to engage in sexual conduct with the victim before she reached the age of eighteen. *See id.* Further, as in *Hoffman Estates*, Mr. Benner's conduct as charged and as determined by the jury presents a clear violation of the child seduction statute, and the failure to define the parameters of the prohibited conduct with greater particularity does not render it unconstitutionally vague. Therefore, this claim is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In light of Judge Mathias' dissent on interlocutory appeal, the court will grant a certificate of appealability on Mr. Benner's claim that the child seduction statute is unconstitutionally vague.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); GRANTS a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED.

December 23, 2021                              *s/ Damon R. Leichty*
                                                              Judge, United States District Court